## COULTER *v.* LUMPKIN.

1. A decree for a specific sum of money but giving time to perform partly by paying money and partly by executing a promissory note with security, may be enforced by execution, without further order, after the time limited for discharging the recovery in the way specified has expired, if the defendant is still wholly in default.

2. A judgment or decree for alimony has only the lien of ordinary general judgments for money, as to any property of the defendant not specifically dealt with and described in the judgment or in the pleadings.

3. A creditor of the husband who, whilst a suit is pending against the latter for alimony, takes *bona fide*, without fraud on his part or any notice of a fraudulent object by his debtor, or any reasonable grounds of suspicion, a mortgage upon property not embraced in the pleadings of the pending suit, to secure a pre-existing debt, has priority over the lien of the judgment or decree for alimony subsequently rendered, the same as he would have over the lien of a judgment in favor of an ordinary creditor of the mortgagor, notwithstanding he knew when he took the mortgage that the suit for alimony was pending. The mere pendency of such a suit will not disable the defendant therein from making a *bona fide* mortgage or conveyance of unincumbered property over which the court has not taken nor been asked to take any direct jurisdiction in order to administer or secure it for application to the claim for alimony.

July 30, 1894.

Equitable petition. Before Judge HENRY. Walker superior court. February term, 1893.

For a former report of this case, see 88 *Ga.* 277.

R. M. W. GLENN, C. P. GOREE and I. E. SHUMATE, for plaintiff in error.

LUMPKIN & SHATTUCK and COPELAND & JACKSON, *contra.*

v 94-15

SIMMONS, Justice.

Clara Coulter and her husband, O. L. Coulter, separated, and she brought an action against him for alimony. A consent decree was taken in the following terms:

"By consent of parties to the above stated case . . . it is ordered, adjudged and decreed by the court that complainant, Clara Coulter, recover from respondent, O. L. Coulter, one hundred and seventy-five dollars for alimony, and thirty-four dollars costs of suit, to be discharged as follows: Said O. L. Coulter is to pay into court instanter such sum as he may now be prepared or able to pay, and the remainder by August term, 1886, of this court, or to settle in full the decree by his promissory note, with J. A. Coulter or other like good security, to said Clara Coulter for said remainder; said note to become due 25th day of August, 1886. Upon compliance with the above conditions or either of them, the said Clara Coulter agrees in open court as aforesaid to disclaim any other or further alimony against said O. L. Coulter, and relieve said O. L. Coulter from any and all obligation, legal, equitable or otherwise, to support, maintain or provide for her, said Clara Coulter, under his marital obligations. Upon complying with the foregoing conditions in full on part of said O. L. Coulter, ordered and adjudged by the court that this decree be final and in full settlement of said case."

The husband failed to comply with the terms of the decree, and an execution was issued thereon January 30, 1888, and levied upon several lots of land, among them a sixth-interest in lot number 169 in Walker county. This land was exposed for sale by the sheriff and bought by H. P. Lumpkin, he being the highest and best bidder, and a deed was made to him by the sheriff. In November, 1885, prior to the consent decree of April, 1886, O. L. Coulter executed a mortgage to his brother, W. H. Coulter, upon an undivided sixth-interest in lot 169, with power given therein to the mortgagee to sell the same, after properly advertising it

as prescribed in the mortgage, in case the note for which it was given as security was not paid at maturity. The note not being paid at maturity, the mortgagee advertised it for sale in accordance with the power given in the mortgage, and Lumpkin filed his petition in equity, setting up that the mortgage was given after the separation of the husband and wife, and was therefore void, and also that it was given for the purpose of defrauding the creditors of the mortgagor. Coulter, the mortgagee, answered the petition, denying that the mortgage was fraudulent, and insisting that the mortgagor had a right to execute the mortgage for the purpose of securing a *bona fide* debt which the mortgagor owed him, and that the fact that the husband and wife had separated did not make the mortgage illegal. It further appears that the property in dispute was not embraced in the application for alimony. On the trial of the case Lumpkin tendered in evidence the execution, which was objected to by the defendant, on the ground that the judgment or decree did not authorize the issuing of a *fi. fa.*; that the sale thereunder was void, and that it showed on its face that it was to be satisfied only in the way specified therein. The court overruled the objection, and this ruling is made one of the grounds of the motion for a new trial.

1. We think the court was right in overruling the objection. It will be observed that the decree is for a specific sum of money, but allows the defendant to satisfy the decree by paying a part thereof in cash, and giving his note with security for the balance. This doubtless was for his benefit. When, therefore, he failed to comply with the terms of the decree, the plaintiff had a right to enforce it by having an execution issued for the specific amount of money mentioned in the decree, and this could be done without any further order or decree of the trial judge.

2. The application for alimony not describing specifically any property of the husband, the judgment or decree granting the application had only the lien of an ordinary general judgment for money. It did not fix a lien on the property of the husband superior to all other liens.

3. Section 1721 of the code declares that "after a separation, no transfer by the husband of any of the property, except *bona fide* in payment of pre-existing debts, shall pass the title so as to avoid the vesting thereof, according to the final verdict of the jury in the cause." It was contended by the defendant in error that this section applies to all cases of separation between husband and wife, and that therefore the mortgage made by the husband to his brother, after the separation, was void thereunder. That would be true, in our opinion, if the separation was followed by proceedings for a divorce, but where no such proceeding is instituted, but there is simply an application for alimony, and where the application does not set out a schedule of the property of the husband, this section does not apply. Even a decree for alimony rendered in a suit for divorce has no retroactive effect except as to property embraced in the schedule.

4. If this is true, the mortgage given by the husband to his brother, if taken by him *bona fide* and without fraud on his part or notice of a fraudulent intent or reasonable ground for suspicion, upon property not embraced in the pleadings, to secure a *bona fide* pre-existing debt, would have priority over the judgment or decree for alimony obtained prior to the rendition of that judgment, just as much as if a creditor had sued the brother and obtained judgment after the execution of the mortgage; and this is true although the mortgagee may have had notice of the pending suit. The pendency of the suit would not prevent the defendant therein

from making a *bona fide* mortgage upon property which the court had not taken nor been asked to take jurisdiction of in order to administer or secure it for the wife in payment of her alimony. The wife not claiming in her pleadings any lien superior to other liens, and not specifying or describing any particular property therein, and the court not having rendered any judgment decreeing a special and superior lien, her judgment is necessarily a general judgment, and inferior to any *bona fide* lien created before its rendition.     *Judgment reversed.*