IN RE GUARDIANSHIP OF GARDNER: WILSON, Respondent, vs. ESTATE OF GARDNER, Appellant.

*December 5, 1935—March 3, 1936.*

For the appellant there was a brief by *Ramsdell, King & Linderman* of Eau Claire, and oral argument by *Bailey E. Ramsdell.*

*Arthur Goldblatt* of Chicago, Illinois, for the respondent.

FOWLER, J.   The claim involved is by the divorced wife of a mentally incompetent World War veteran against his estate in the hands of his guardian.   The claim is based upon a judgment of divorce which awarded the claimant the custody of a child of the parties and ordered the veteran to pay $8 a week to her for the child's support.   The amount unpaid on this award was fixed by the court at $2,451.24, and the claim was allowed at that amount.   The mother has received from the Veterans' Administration for support of the child the amount of $1,722.76, which was applied by the

court as payment on the accumulations of the instalments of the judgment of the court in the divorce action, together with such other sums as had been received by the claimant pursuant to said judgment, and the allowance was for the difference between the amount of all such payments and the aggregate of the amount due upon the judgment.

The payments by the Veterans' Administration to the claimant were made to her as guardian of the child upon an allotment of the veteran's monthly compensation between the veteran and the child.

The guardian of the veteran has in his hands belonging to his ward funds properly invested aggregating, with a small sum in the bank not invested, $3,080.06, all received from the Veterans' Administration as due the incompetent as a disabled World War veteran under an act of congress. There is also a lost veterans' adjusted compensation certificate calling for payment to the veteran at a future date of $1,577.

The statutes involved hereinafter referred to are cited by section number only, and refer to sections of title 38, U. S. Code, 1934 edition. The appellant claims that the judgment allowing the claim is erroneous under provisions of sec. 454 that amounts payable under the act providing for compensation to disabled World War veterans shall not be assignable, shall be exempt from the claims of creditors of any person to whom an award is made, and shall be exempt from taxation. The appellant also relies on sec. 618 in support of this contention. This section refers to adjusted compensation for service while enlisted during the World War and provides that no such compensation payable to World War veterans under the Adjusted Compensation Act to a veteran or his dependents or to his estate "shall be subject to attachment, levy, or, seizure under any legal or equitable process." As the fund involved was not received by the veteran as ad-

justed compensation, we do not perceive that this section applies to the funds in the hands of the veteran's guardian, although it does cover the unpaid adjusted compensation certificate.

A statute more in point, because of its interpretation by the supreme court of the United States, is sec. 54, which provides that "no sum of money due, or to become due, to any pensioner shall be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, whether the same remains with the Veterans' Administration or any officer or agent thereof, or is in course of transmission to the pensioner entitled thereto, but shall inure wholly to the benefit of such pensioner."

The United States supreme court held in *McIntosh v. Aubrey,* 185 U. S. 122, 22 Sup. Ct. 561, 563, that:

"The exemption provided by the act [§ 54] protects the fund only while in course of transmission to the pensioner. When the money has been paid to him it has 'inured wholly to his benefit,' and is liable to seizure as opportunity presents itself. The pensioner, however, may use the money in any manner, for his own benefit and to secure the comfort of his family, free from the attacks of creditors, and his action in so doing will not be a fraud upon them."

The statute when so construed was the same as above quoted, except that the words "Pension Office" stood in place of "Veterans' Administration." The case from which the statement above quoted was made involved a levy upon execution upon land purchased with pension money. The case is followed in *Trotter v. Tennessee,* 290 U. S. 354, 54 Sup. Ct. 138, which involved taxation of land purchased by a guardian of a veteran with moneys received from the United States for use of the disabled ward. Claim of exemption from taxation was based upon sec. 454, which, as above stated, covers assignment, exemption from subjection to claims of credi-

tors, and exemption from taxation. The lands so purchased were held not exempt. The opinion by Mr. Justice CARDOZO states:

"The moneys payable to this soldier were unquestionably exempt till they came into his hands or the hands of his guardian. *McIntosh v. Aubrey,* 185 U. S. 122, 22 Sup. Ct. 561. We leave the question open whether the exemption remained in force while they continued in those hands or on deposit in a bank. *Cf. McIntosh v. Aubrey, supra; State v. Shawnee County Comm'rs,* 132 Kan. 233, 294 Pac. 915; *Wilson v. Sawyer,* 177 Ark. 492, 6 S. W. (2d) 825; and *Surace v. Danna,* 248 N. Y. 18, 24, 25, 161 N. E. 315. Be that as it may, we think it very clear that there was an end to the exemption when they lost the quality of moneys and were converted into land and buildings. The statute speaks of 'compensation, insurance, and maintenance and support and allowance payable' to the veteran, and declares that these shall be exempt. We see no token of a purpose to extend a like immunity to permanent investments or the fruits of business enterprises. Veterans who choose to trade in land or in merchandise, in bonds or in shares of stock, must pay their tribute to the state. If immunity is to be theirs, the statute conceding it must speak in clearer terms than the one before us here."

The opinion then cites the following decisions disallowing the exemption: *State v. Wright,* 224 Ala. 357, 140 So. 584; *Martin v. Guilford County,* 201 N. C. 63, 158 S. E. 847; and the following to the contrary which it expressly disapproves: *Rucker v. Merck,* 172 Ga. 793, 159 S. E. 501; *Atlanta v. Stokes,* 175 Ga. 201, 165 S. E. 270; and *Payne v. Jordan,* 36 Ga. App. 787, 138 S. E. 262. It then states that the exemption is not enlarged by reason of payment to the guardian instead of to the ward, following *Spicer v. Smith,* 288 U. S. 430, 53 Sup. Ct. 415. Two of the disapproved Georgia cases next above cited upholding the exemption involved taxation of lands purchased with funds paid by the government to

veterans or their beneficiaries. The other related to seizure on execution of land so purchased. The two cited with favor held land so purchased subject to taxation.

While the cases above cited holding that the statute did not operate to exempt after the funds received were converted into land or other property involved taxation, the reason for the rule of the cases extends to the other two exemptions included in the statute. Unquestionably they would compel holding lands paid for by money received from the government as veterans' compensation subject to execution. In the instant case, had land been purchased by the guardian with the funds involved, there would be no doubt that the county court might devote it toward payment of the claim here involved. This conclusion is supported by the decision in *Joyce v. Russell,* 140 Wis. 583, 123 N. W. 123, which held that land purchased with pension money from the United States government was subject to the claims of creditors of the recipient upon her death under the provision of the statute now sec. 54. While the word in sec. 454 is "payable," and the words in sec. 54 are "due or to become due," the two statutes are otherwise the same, and the word "payable" in sec. 454 was construed by the Kansas court in *State v. Board of Comm'rs of Shawnee County, supra,* as meaning the same as "due or to become due" in sec. 54, and it is to be noted that the supreme court of the United States denied *certiorari* in that case (283 U. S. 855, 51 Sup. Ct. 648), and cites the case in the portion of the opinion in *Trotter v. Tennessee, supra,* above quoted.

We see no material difference as to exemption between land purchased with moneys received by the veteran from the government as compensation and moneys so received invested in a mortgage, as $2,000 of it herein involved is invested, or invested in United States treasury bonds, as $1,003.42 of it is invested. If, under the statute relied on when the veteran

invests his money in land or bonds, the investment is subject to taxation, as stated by Mr. Justice CARDOZO in the above quotation, so, under the same statute, is it subject to application to pay claims of his creditors. And, if there is no enlargement of exemption by reason of payment to the guardian instead of to the ward, so there is no enlargement if the investment is made by the guardian instead of by the veteran himself.

The respondent also claims that the claim herein is not one by a creditor within the meaning of sec. 454. In support of this contention, the case of *Hollis v. Bryan,* 166 Miss. 874, 143 So. 687, is cited. This case held that a divorced wife to whom alimony was due under her decree of divorce is not a "creditor" within the meaning of sec. 454, and that funds received by the guardian of the veteran were not exempt under that section from subjection to the claim of the former wife for unpaid alimony. Another case, *Stone v. Stone,* 188 Ark. 622, 67 S. W. (2d) 189, holds that a divorced wife of a veteran claiming payment of statutory dower in personalty out of funds in the hands of his guardian received from the United States government as compensation was not a creditor within sec. 454, and the fund was subject to appropriation in payment of her claim, notwithstanding that the government had allotted her $30 per month out of the veteran's disability compensation. Along the same line is *Stirgus v. Stirgus,* 172 Miss. 337, 160 So. 285, which holds that funds of the father of a veteran received on account of his son's war service are not exempt from appropriation to payment of an order for temporary alimony ordered in a divorce suit brought by his wife.

The three cases above stated afford basis for holding that claimant is not a creditor within sec. 454. While the amount claimed is not alimony for the support of the wife, it is alimony for the support of the child, and we perceive no differ-

ence between the nature of the payments ordered by the court as alimony for support of the wife and alimony ordered for the support of the child.

The appellant claims further that the orders of the administrator of veterans' affairs allotting sums for the support of the child of the veteran are final and conclusive, and that, the administrator having made specified allotments to the child out of the veteran's monthly compensation, no further sums can be taken out of the fund accumulated in the hands of the guardian. While an order of the administrator is final, its effect merely is that no court can adjudge the administrator to make any greater or different allotment. It does not prevent application of the accumulated fund to the payment of accrued support money under the divorce judgment. The *Stone Case, supra,* held that the administrator's prior allotment for support of the wife of a veteran did not prevent accumulated funds to subjection to payment of her statutory dower in personalty. For like reason the administrator's previous allotment for the support of the child herein does not prevent the accumulated funds in the hands of the guardian from application to the amount due the veteran's divorced wife upon the judgment of the court that granted the divorce.

The appellant urges that sec. 454 has been repealed and sec. 454a substituted therefor by ch. 510, sec. 3, 49 U. S. Stat. at L., and that the latter is more reaching than the former in exempting funds received by veterans from the government from subjection to claims of creditors. The latter statute reads:

"Payments of benefits due or to become due shall not be assignable, and such payments made to, or on account of, a beneficiary under any of the laws relating to veterans shall be exempt from taxation, shall be exempt from claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary."

It is further pointed out that sec. 5 of the act above cited provides that the act shall take effect from and after its passage, but shall apply to funds theretofore paid. The act was passed August 12, 1935. The judgment appealed from was entered June 19, 1935. As the act had no "force or effect" before it was enacted, it does not affect a judgment rendered before it was enacted. And, if the claimant is not a creditor within the meaning of old sec. 454, she is not within the meaning of the new sec. 454a. We are of opinion that the new statute does not require any modification of the views above expressed.

The judgment appealed from, after allowing the claimant's claim at $2,451.24, and adjudging it "a valid and legal claim against the estate," concluded with a provision as follows :

"And it is further adjudged that since the requirements of said ward for his future maintenance and support have not been passed upon, and his expenses in these proceedings have not been determined, that the question as to what dividend should be paid to creditors, or what distribution should be made of the assets of said ward, is not determined, but is subject to further proceedings according to law."

There was heard with the claim herein involved a claim of the state board of control under sec. 49.10, Wis. Stats., for support of the veteran while in the central hospital for the insane, which was allowed at $3,234.56. The judgment upon that claim closed with a paragraph like that above quoted, except as to amount and name of claimant. The fund in the hands of the guardian is insufficient to satisfy both claims as allowed by the county court. We infer that the provision quoted was inserted to cover the matter of distribution and to cover the contingency that the court might in its discretion subsequently determine that the property of the ward should not be devoted to the payment of the state's claim in view of the discretion given by sec. 49.10, Wis. Stats., in cases wherein the incompetent has a child dependent on him for

future support. The state's claim has been denied by this court upon the ward's appeal and direction given for its dismissal. See *Guardianship of Gardner, ante,* p. 490, 264 N. W. 647. In view of the decision upon the board of control's claim the provision above quoted has no place in the judgment, however it might be if the judgment on that claim had been affirmed, and the provision should be stricken.

*By the Court.*—The judgment of the county court is modified by striking therefrom the last paragraph thereof, and as so modified is affirmed.